IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MCGUIGAN and BRIDGET
MCGUIGAN,

                Plaintiffs,

    v.

AMERICAN STRATEGIC INSURANCE
CORP.,

                Defendant.

CIVIL ACTION
NO. 25-01553

## OPINION

**Slomsky, J.**                                               **July 15, 2025**

## I.    INTRODUCTION

This case concerns an insurance dispute arising out of property damage to Plaintiffs Michael McGuigan and Bridget McGuigan's ("Plaintiffs") residence. (See Doc. No. 7.) Plaintiffs acquired home insurance from Defendant American Strategic Insurance Corporation ("Defendant" or "ASI") for the protection of their residence located in Limerick, Pennsylvania. (Id. at ¶¶ 3, 13.) When the residence suffered property damage, Plaintiffs submitted a claim to Defendant for the loss but ASI denied the claim.[1] (Id. at ¶¶ 13-15.) As a result, Plaintiffs brought the instant suit, alleging in an Amended Complaint, the following claims against Defendant: (1) breach of contract ("Count I"), (2) statutory bad faith under 42 Pa. Cons. Stat. § 8371 ("Count II"), and (3) fraudulent misrepresentation ("Count III"). (See id.) In response, Defendant filed a Motion to Dismiss the Amended Complaint, seeking dismissal of the bad faith and fraudulent misrepresentation claims alleged in Counts II and III, respectively, pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] The Amended Complaint does not indicate the specific property damage nor the cause of the damage.

(See Doc. No. 9.)  Defendant does not seek dismissal of the breach of contract claim alleged in Count I.  (See id.)  For reasons that follow, Defendant's Motion to Dismiss Counts II and III of the Amended Complaint (Doc. No. 9) will be granted.

## II.    BACKGROUND

As mentioned above, Plaintiffs Michael McGuigan and Bridget McGuigan are adult individuals residing in Limerick, Pennsylvania.  (Doc. No. 7 at ¶¶ 1-2.)  Plaintiffs purchased an insurance policy from Defendant ASI for their residence.  (Id. at ¶¶ 3, 9.)  This insurance policy provided for the following coverages:  (1) buildings, (2) personal property, (3) fire damage, and (4) water damage for any losses which may occur on the property.  (Id. at ¶ 11.)  The insurance policy was in effect for the calendar year 2022.  (Id. at ¶ 12.)

On October 5, 2022, Plaintiffs' residence suffered significant property damage.  (Id. at ¶ 13.)  Plaintiffs promptly notified Defendant of the damage and filed a claim under their home insurance policy.  (Id. at ¶ 14.)  However, Defendant denied the claim.  (Id. at ¶ 15.)  The Amended Complaint does not specify why Defendant denied Plaintiffs' claim.  (See id.)

On February 21, 2025, Plaintiffs filed a Complaint against Defendant in the Court of Common Pleas of Montgomery County, Pennsylvania.  (Doc. No. 1.)  On March 24, 2025, Defendant removed the case to the United States District Court for the Eastern District of Pennsylvania.  (See id.)  On March 31, 2025, Defendant filed a Motion to Dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 6.)  In response, on April 9, 2025, Plaintiffs filed an Amended Complaint and, on the same day, this Court issued an Order denying Defendant's Motion to Dismiss the Complaint without prejudice as moot. (Doc. Nos. 7, 8.)

On April 22, 2025, despite the additional allegations Plaintiffs added to the Amended Complaint, Defendant filed a Motion to Dismiss the Amended Complaint, seeking dismissal of the

bad faith and fraudulent misrepresentation claims alleged in Counts II and III.  (Doc. No. 9.)  In the Motion, Defendant argues Plaintiffs have not sufficiently alleged specific facts to support their bad faith and fraudulent misrepresentation claims.  (See id.)  On May 5, 2025, Plaintiffs filed a Response to Defendant's Motion to Dismiss the Amended Complaint.  (Doc. No. 10.)  In the Response, Plaintiffs first contend the Amended Complaint pleads specific conduct that constitutes bad faith.  (See id.)  Second, Plaintiffs assert the Amended Complaint sufficiently alleges each of the elements of fraudulent misrepresentation.  (See id.)

On May 12, 2025, Defendant filed a Reply in Support of its Motion to Dismiss the Amended Complaint.  (Doc. No. 12.)  In the Reply, Defendant again asserts Plaintiffs have failed to provide any factual support for the allegations made in the Amended Complaint.  (See id.)  On June 17, 2025, the Court held a hearing on the Motion, at which counsel for both parties were present.  Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 9) is now ripe for disposition.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must 'take[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). The court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff . . . [and dismiss if] the plaintiff can prove no set of facts that would entitle her to relief. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

A complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility determination is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.    ANALYSIS

### A.    Plaintiffs Fail to State a Bad Faith Claim

In Count II of the Amended Complaint, Plaintiffs fail to state a bad faith claim because they have not pled facts showing Defendant lacked a reasonable basis for denying benefits or knew or recklessly disregarded the lack of a reasonable basis. Plaintiffs allege Defendant acted in bad faith as defined under 42 Pa. Cons. Stat. § 8371 through its refusal "to provide coverage to said claim of damages even though all appropriate premiums have been provided to Defendant." (Doc. No. 7 at ¶ 33.) Defendant counters that Plaintiffs' bad faith claim should be dismissed because it "offers no more than conclusory allegations of bad faith." (Doc. No. 9-1 at 5.) Defendant further argues that Plaintiffs' bad faith claim should be dismissed because it is merely "boilerplate allegations that the insurer acted in bad faith." (See id.)

Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, permits policyholders to recover damages if they can show that an insurance company knowingly denied benefits and lacked a reasonable basis to do so. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONST. STAT. § 8371. While the statute does not define "bad faith," the Pennsylvania Superior Court defines bad faith as "any frivolous or unfounded refusal to pay the proceeds of a

policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)).  The Third Circuit has adopted this definition and added that this sort of bad faith is in "breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith."  Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005).

In addition, the Third Circuit has applied a two-part test to bad faith claims brought under § 8371:

> both elements of which must be supported by clear and convincing evidence: (1) whether the insurer lacked a reasonable basis for denying benefits under the insured's policy, and (2) whether the insurer knew or recklessly disregarded the lack of a reasonable basis.

Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012).

Bad faith claims are fact specific and turn on the conduct of the insurer toward the insured. Dougherty v. Allstate Prop. And Cas. Ins. Co., 185 F. Supp. 3d 585, 598 (E.D. Pa. 2016).  Because bad faith claims are fact specific, to survive a motion to dismiss "a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements."  Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citing Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133,136 (2d Cir. 2012)).  Accordingly, "[a] plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair."  Id.

Here, viewing the allegations in the Amended Complaint in the light most favorable to Plaintiffs, the allegations consist only of conclusory statements and fail to cite specific facts to support the two elements of a bad faith claim, which are, as noted above, (1) whether the insurer lacked a reasonable basis for denying benefits under the insured's policy, and (2) whether the insurer knew or recklessly disregarded the lack of a reasonable basis.  See Smith, 506 F. App'x at

136.  Thus, the allegations in Count II of the Amended Complaint do not plausibly allege a bad

faith claim.

### 1. Plaintiffs Do Not Plausibly Allege Defendant Lacked a Reasonable Basis for Denying Benefits

First, Plaintiffs have not pled facts showing that Defendant lacked a reasonable basis for

denying benefits.  Plaintiffs' allegations of bad faith are numerous.  (See Doc. No. 7 at ¶ 37.)

Specifically, Plaintiffs allege the following bad faith actions:

(a)  Unreasonably delaying and/or denying Plaintiffs' claim;

(b)  Failing to properly investigate the damage;

(c)  Providing misleading or incomplete information about the claim process;

(d)  Refusing to pay the full amount of covered losses without justification;

(e)  Engaging in deceptive claims-handling practices intended to frustrate policyholders;

(f)  Failing to properly adjust said losses;

(g)  Failing to engage in claims revision of any claim supplementals;

(h)  Failing to properly inspect and/or evaluate acknowledged loses found by Kery Adjusting, Inc.

(Id.)

Several courts in the Third Circuit have considered similarly pled bad faith claims and

concluded they lack specific factual details and consist of only "bare-bones allegations."  For

example, in Brown v. LM Gen. Ins. Co., the plaintiff listed thirty-eight (38) bare-bones allegations

of bad faith in her amended complaint.  No. 21-2134, 2021 WL 3809075, at *2 (E.D. Pa. Aug. 26,

2011).  The court summarized these allegations as follows:

> [The plaintiff] alleges that . . . [the defendant], among other things, engaged in
> "dilatory and abusive claims handling"; acted "unreasonably and unfairly"; failed
> to pay the disputed amount owed; failed to reasonably and adequately investigate;

> failed to conduct their own medical evaluation of . . . [the plaintiff]; that . . . [the plaintiff] transmitted medical documentation establishing that her injuries resulted from the accident; that . . . [the defendant] failed to consider that documentation, despite "continuously and endlessly" requesting more evidence as a means to delay resolution of the claim; and that . . . [the defendant] relied on the judgment of a nonmedically trained claims adjuster.

Id.  In Brown, the court held these allegations were "conclusions—not facts," noting that, while the complaint took issue with the claims adjusters' lack of medical education, it failed to allege "that the claims adjusters . . . [were] somehow ill-equipped to perform their job." Id. at *3. Ultimately, the court held that the amended complaint merely reflected "a disagreement over the amount of settlement of . . . [the plaintiff's] claim" and dismissed her bad faith claim with prejudice. Id.

Similarly, in MBMJ Props., LLC v. Millville Mut. Ins. Co., the plaintiffs also included a list of bare-bone allegations of bad faith in their complaint. No. 18-5071, 2019 WL 1651667, at *5 (E.D. Pa. Apr. 17, 2017). These claims included allegations of "forwarding correspondence . . . representing to Plaintiff . . . that his claim was not . . . covered under the Defendant's policy of insurance" and "not having a reasonable basis for denying Plaintiff's benefits under the policy." Id. at *4-5. When considering these allegations, this Court held that the plaintiff "based their bad faith claim solely on conclusory allegations that are insufficient to withstand [the defendant's] Motion to Dismiss." Id. at *6. Specifically, the Court found that the plaintiffs' allegation that the defendant "failed to promptly and thoroughly investigate their claim" did not include facts to support this conclusion. Id. For example, the plaintiffs did not plead "(1) the timing of the alleged investigation . . . (2) the methods and procedures by which the investigation was conducted, or (3) the length of the investigation from start to finish." Id. As such, the Court concluded that the plaintiffs' claims were insufficient to raise a plausible bad faith claim. Id.

Here, Plaintiffs' bad faith allegations, similar to those in <u>Brown</u> and <u>MBMJ Props.</u>, consist only of conclusory statements. Although Plaintiffs cite § 8371 and pled conclusions to show how Defendant acted in bad faith, they fail to plead specific facts honing in on Defendant's conduct. (Doc. No. 7 at ¶ 37.) Similar to <u>Brown</u>, Plaintiffs provide no dates regarding when they notified Defendant. For instance, Plaintiffs allege that Defendant "fail[ed] to properly investigate the damage," but provide no examples of how Defendant handled Plaintiffs' claim. (<u>Id.</u> at ¶ 37(b).) Although Plaintiffs allege that they promptly notified Defendant of the damage and filed a claim under the policy, they do not provide any dates or further communications sent to Defendant. (<u>Id.</u> at ¶ 14.) Therefore, as in <u>Brown</u>, Plaintiffs' assertion that Defendant "fail[ed] to properly investigate the damage" is conclusory and unsupported by sufficient facts. (<u>See</u> <u>id.</u> at ¶ 37(b).)

In addition, like the plaintiffs in <u>MBMJ Props.</u>, Plaintiffs here allege that Defendant "fail[ed] to properly inspect and/or evaluate acknowledged loses found by Kery Adjusting, Inc." (<u>Id.</u> at ¶ 37(h).) But, as noted above, this conclusion is unsupported by facts alleging the methods and procedures of the investigation. <u>See</u> <u>MBMJ Props.</u>, 2019 WL 1651667, at *6. While the Amended Complaint identifies Kery Adjusting, Inc. as the adjuster, it does not allege any details about the adjustor's investigation. Without additional facts regarding the investigation, correspondence between the parties, or unreasonable conduct, "the Court cannot infer bad faith" on Defendant's part. <u>See</u> <u>Shadow v. State Farm Mut. Auto. Ins. Co.</u>, No. 20-01336, 2020 WL 1508376, at *2 (E.D. Pa. Mar. 30, 2020) ("Absent additional facts regarding . . . [the plaintiff's] insurance claim and the accompanying investigation, negotiations, or communications that took place, the [c]ourt cannot infer bad faith on . . . [the defendant's] part"), and accepting the allegations in the Amended Complaint as true, it is unclear what motivated Defendant to deny Plaintiffs' benefits under their policy. By not providing specific examples of ill will or disregard

9

for the policy, Plaintiffs do not plead the absence of a reasonable basis to deny benefits under the homeowner's policy.  Therefore, Plaintiffs do not plausibly allege Defendant acted in bad faith in violation of § 8371.

> **2.      Plaintiffs Have Not Plausibly Alleged That Defendant Knew or Recklessly Disregarded a Reasonable Basis Upon Which to Deny Benefits**

Second, Plaintiffs have not pled facts showing that Defendant knew or recklessly disregarded the lack of a reasonable basis to deny benefits.  See Smith, 506 F. App'x at 136.  In the Amended Complaint, Plaintiffs allege Defendant acted in bad faith by "engaging in deceptive claims-handling practices intended to frustrate policyholder."  (Doc. No. 7 at ¶ 37.)   But for the same reasons listed above, the allegation is conclusory and lacks the specificity required to survive a motion to dismiss.

Therefore, even when viewing the Amended Complaint in the light most favorable to Plaintiffs, the allegations in Count II lack the details necessary to meet the required specificity to support a bad faith claim.  Accordingly, Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 9) will be granted on Plaintiffs' bad faith claim (Count II).

> **B.      The Gist of the Action Doctrine Precludes Plaintiffs' Fraudulent Misrepresentation Claim**

Defendant argues in its Motion to Dismiss that the fraudulent misrepresentation claim alleged in Count III is "barred by Pennsylvania's gist of the action doctrine."  (Doc. No. 9-1 at 7.) The Court agrees and will grant Defendant's Motion to Dismiss Count III of the Amended Complaint.  (Doc. No. 9.)

Under Pennsylvania law, the gist of the action doctrine "prohibits a plaintiff from bringing a tort claim that simply reproduces a claim for breach of contract."  Ohama v. Markowitz, 434 F.

Supp. 3d 303, 319 (E.D. Pa. 2020).  Specifically, the gist of the action doctrine bars the following:
a tort claim

> (1) [a]rising solely from a contract between the parties; (2) where the duties allegedly
> breached were created and grounded in the contract itself; (3) where the liability stems
> from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim
> or the success of which is wholly dependent on the terms of a contract.

Hart v. Arnold, 884 A.2d 316, 340 (Pa. 2005).   In other words, "[w]here the alleged
misrepresentation or fraud concerns the performance of contractual duties, 'then the alleged fraud
is generally held to be merely collateral to a contract claim for breach of those duties.'"  Smith v.
Lincoln Ben. Life. Co., 395 F. App'x 821, 823 (3d Cir. 2010) (quoting eToll, Inc. v. Elias/Savion
Adver., 811 A.2d 10, 19 (Pa. Super. Ct. 2002)).

For example, in Yakubov, the court barred the plaintiff's intentional misrepresentation
claim under the gist of the action doctrine.  See Yakubov v. GEICO General Ins. Co., No. 11-3082,
2011 WL 5075080, at *2 (E.D. Pa. Oct. 24, 2011).  There, the plaintiff was injured in a motor
vehicle accident by an uninsured motorist and submitted a claim to their insurance company
seeking damages.  See id. at *1.  The defendant insurance company, however, refused to pay the
plaintiff for the amount alleged in the claim.  Id.  Following the defendant's refusal, the plaintiff
filed a complaint against the defendant alleging the following claims:  "a claim for [uninsured
motorist] benefits (Count I); a claim for income loss benefits (Count II); a claim alleging a violation
of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count III);
a claim of bad faith (Count IV); and a claim alleging intentional misrepresentation (Count V)."  Id.

In response, the defendant filed a motion to dismiss, arguing the intentional
misrepresentation claim was barred by Pennsylvania's gist of the action doctrine.  Id.   In the
complaint, the plaintiff alleged that the defendant "represented to him that his Policy provided
income loss coverage and charged a premium for income loss coverage, but that [the defendant's]

promise to pay income loss benefits was 'wholly illusory' and [the defendant] never intended to pay income loss benefits." Id. at *2. The court agreed with the defendant and applied the gist of the action doctrine, finding that "the relationship and duties of the parties arise under the Policy." See id. As such, the court concluded that, because the plaintiff's "'misrepresentation' claim [wa]s 'really about' [the defendant's] alleged breach of its obligations under the Policy," the misrepresentation claim was "duplicative of and collateral to [the plaintiff's] contract claims" and thus barred by the gist of the action doctrine. Id.

Here, Plaintiffs' fraudulent misrepresentation claim, like the misrepresentation claim in Yakubov, is merely a tort claim arising from the parties' contractual relationship defined in the Policy. Plaintiffs allege in their misrepresentation claim that Defendant knowingly made false representations regarding "the scope of coverage, claim payments, and policyholder rights with the intent to deceive Plaintiff." (Doc. No. 7 at ¶ 40.) In addition, Plaintiffs allege Defendant "fraudulently misrepresented the value of their damaged property" by "under compensat[ing] them." (Id. at ¶ 41.) But like the misrepresentation claim in Yakubov, this claim here is really about Defendant's alleged breach of its obligations to Plaintiffs under the Policy and is thus "duplicative of and collateral to [Plaintiffs'] contract claim[]." Yakubov, 2011 WL 5075080, at *2. Therefore, like the claim in Yakubov, the gist of the action doctrine bars the fraudulent misrepresentation claim in Count III, which will be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendant American Strategic Insurance Corporation's Motion to Dismiss Counts II and III of the Amended Complaint (Doc. No. 9) will be granted. An appropriate Order follows.